Filed 6/14/13  Pekin v. Scagliotti CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SIXTH APPELLATE DISTRICT

| | |
|---|---|
| PATRICK PEKIN, | H035867 |
| Plaintiff and Appellant, | (San Benito County<br>Super. Ct. No. CU-03-00150) |
| v. | |
| RICHARD SCAGLIOTTI, et al., | |
| Defendants and Respondents. | |

Patrick Pekin (Pekin) sued Richard Scagliotti (Scagliotti), as an individual and a former member of the San Benito County Board of Supervisors (Board), the Board, and the San Benito County Financing Corporation (SBCFC), "a wholly owned subsidiary of San Benito County" (County).  In this appeal, Pekin is challenging the trial court's order denying his motion to disqualify opposing counsel, Michael Serverian.[1]  Pekin had alleged that Serverian's joint representation of Scagliotti and the County involved a disqualifying actual conflict of interest.  The County as an entity is not a separately named defendant.

We affirm the court's order refusing to disqualify attorney Serverian.

_____

[1]     An order denying a motion to disqualify opposing counsel is an appealable order. (*Meehan v. Hopps* (1955) 45 Cal.2d 213, 215-217; see Code Civ. Proc., § 904.1, subd. (a)(6).)

1

# I

## *Procedural History*

Plaintiff Pekin's eighth amended verified complaint, filed August 28, 2007, apparently was the operational pleading at the time of Pekin's disqualification motion. It includes 26 separate "counts," 25 against defendant Scagliotti and one only against defendant Board doing business as (dba) defendant SBCFC. None of the causes of action are against both defendant Scagliotti and defendants Board and SBCFC.

The complaint alleges that the SBCFC is "a shell, a wholly owned subsidiary of San Benito County." It also avers that Scagliotti was a former member of the Board, the SBCFC's Board of Directors, and the Board of Directors of the Council of Governments (COG). Scagliotti allegedly "left office at both the County and COG at the end of December, 2004."

The complaint charges Scagliotti with violating Government Code section 1090, which provides that a public officer or employee "shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members."[2] He also alleges multiple violations of the Political Reform Act of 1974 (PRA) (§§ 81000 to 91014). Pekin seeks to hold Scagliotti civilly liable for making or influencing governmental decisions while having a prohibited financial interest and failing to comply with disclosure requirements.[3]

---

[2] "Every contract made in violation of any of the provisions of Section 1090 may be avoided at the instance of any party except the officer interested therein." (Gov. Code, § 1092, subd. (a).) All further statutory references are to the Government Code unless otherwise stated. "It is settled law that where a contract is made in violation of section 1090, the public entity involved is entitled to recover any compensation that it has paid under the contract without restoring any of the benefits it has received. [Citations.]" (*Finnegan v. Schrader* (2001) 91 Cal.App.4th 572, 583.)

[3] Section 87100 states: "No public official at any level of state or local government shall make, participate in making or in any way attempt to use his official position to influence a governmental decision in which he knows or has reason to know he has a

2

Count four, the only cause of action against the Board and SBCFC, seeks to compel the Board dba SBCFC to "conduct an audit and stop waste of the public fisc." Count four alleges the following. In 1998, the Board "created a 'dummy corportation for debt issuance,' " the SBCFC. The "SBCFC has no separate existence or entity other than through Defendant [Board]" and "[t]here is such a unity of interest and ownership that the individuality, or separateness of the entities does not exist." The SBCFC "purchased a commercial building using some space for county government purposes and renting the rest for profit." The SBCFC "is actually a for profit corporation" which is "required to report such profits for federal and state tax purposes." The "Board has not reported where the profits of SBCFC have been placed or who is in charge of them." "Internal memorandum of SBCFC show that during its entire existence, rents have been unaccounted for, not received, or misallocated." The building owned by the SBCFC "has been wastefully underutilized" and "its vacancy rate was unreasonably high due to wasteful mismanagement."

financial interest." Under section 87203, public officers, including county supervisors, must file annual statements of economic interests. (See § 87200, Cal. Code Regs., tit. 2, § 18723.) Pekin is seeking recovery under the PRA pursuant to section 91004 and 91005. Section 91004 states: "Any person who intentionally or negligently violates any of the reporting requirements of this title shall be liable in a civil action brought by the civil prosecutor or by a person residing within the jurisdiction for an amount not more than the amount or value not properly reported." Under section 91005, a county supervisor "who realizes an economic benefit as a result of a violation of Section 87100 or of a disqualification provision of a conflict of interest code is liable in a civil action brought by the civil prosecutor or by a person residing within the jurisdiction for an amount up to three times the value of the benefit." (§ 91005, subd. (b), see § 87200.) Section 91009 provides in pertinent part: "If a judgment is entered against the defendant or defendants in an action brought under Section 91004 or 91005, the plaintiff shall receive fifty percent of the amount recovered. The remaining fifty percent shall be deposited in the General Fund of the state. In an action brought by the civil prosecutor, the entire amount recovered shall be paid to the general fund or treasury of the jurisdiction."

3

An answer to that complaint was filed on behalf of all defendants in October 2007. As to count four, defendants admitted that the Board is the Board of Directors for the SBCFC. The answer stated numerous affirmative defenses.

The parties' briefs indicate that the matter went to trial but a mistrial was declared. Although plaintiff Pekin claims on appeal that at least 14 of the causes of action were proven at trial, the appellate record does not reflect that any claim was finally adjudicated.

On April 29, 2010, Pekin filed a motion to disqualify opposing counsel on the ground that the County and defendant Scagliotti were being "jointly represented by outside counsel provided by the County" and this involved "a conflict of interest between two current clients . . . , the public and the corrupt official." Pekin argued: "In this case Michael C. Serverian represents both the public entity charged with vigorously enforcing the provisions of the PRA and the public official who has violated the same law. This strikes at the integrity of the governmental and judicial systems, is an affront to the public which has a right [to] expect that the government will uphold, not avoid the law, and cannot be permitted by this Court." Pekin maintained that the County should have discontinued providing a defense for Scagliotti under the authority of section 995.2, which implied that the County had been providing a defense to Scagliotti pursuant to section 995.

In supporting argument, Pekin stated, without citation to any supporting authority, that the County was "prohibited by the PRA itself from arguing on behalf of one of its present or former officials for the application of affirmative defenses to defeat liability on meritorious charges." He indicated that the County should have been enforcing section 1090 and the PRA "for the 'public trust.' " Pekin cited *San Diego Navy Federal Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 for the proposition that "some actual conflicts are so fundamental that they cannot be waived."

4

Counsel for the parties stipulated that the sole argument at the June 18, 2010 hearing would be Pekin's motion to disqualify Serverian from continued representation of the County and Scagliotti based upon an actual conflict of interest.

In the opposition to the disqualification motion, attorney Severian contended that Pekin lacked standing to bring the motion since Pekin was not a client or former client of him or his law firm. Attorney Serverian contended there was no actual conflict between the County and Scagliotti since the "only relief sought against the County is for an audit and accounting (Count 4 of the Eighth Amended Complaint)" and the "remaining counts are to recover monies from Scagliotti individually, and not from the public entity." Attorney Serverian also argued plaintiff Pekin had ignored a public entity's statutory duty under section 995 to provide for the defense of any civil action or proceeding brought against an employee "on account of an act or omission in the scope of his employment as an employee of the public entity." He pointed out that a public entity could be liable if a defense was not provided.[4] He claimed that plaintiff did not know whether the County had obtained a reservation of rights under section 825[5] or whether defendant Scagliotti had signed a conflict waiver.

---

[4] Section 996.4 provides in part: "If after request a public entity fails or refuses to provide an employee or former employee with a defense against a civil action or proceeding brought against him and the employee retains his own counsel to defend the action or proceeding, he is entitled to recover from the public entity such reasonable attorney's fees, costs and expenses as are necessarily incurred by him in defending the action or proceeding if the action or proceeding arose out of an act or omission in the scope of his employment as an employee of the public entity, but he is not entitled to such reimbursement if the public entity establishes (a) that he acted or failed to act because of actual fraud, corruption or actual malice, or (b) that the action or proceeding is one described in Section 995.4."

[5] Section 825 et seq. generally "require public entities to pay claims and judgments against public employees that arise out of their public employment where the public entity has been tendered the defense." (Legis. Com. com.—Sen, 32 Pt.1 West's Ann. Gov. Code (2012 ed.) foll. § 825, p. 455; see §§ 825, 825.2, 825.4, 825.6.) Section 825, subdivision (a), provides in part that "where the public entity conducted the defense

5

Attorney Serverian also asserted that the disqualification motion was untimely since he had been counsel for about four years.[6] He argued that "[i]f another attorney was required to take over the defense at this stage, the fees incurred simply in review of the documents would be immense" and "would cause an undue financial burden on the defendants."

In his written reply, Pekin claimed standing as "a CCP 526a Taxpayer."[7] He argued that attorney Serverian's representation that SBCFC was his client, not the County, was "an attempt to conceal Serverian's actual, conflicting, joint representation of the County and Scagliotti . . . ." Pekin stated that, since his November 1, 2007 letter to the County's County Counsel, "Attorney Serverian has been appearing only for Defendant Scagliotti and Defendant [SBCFC] and not for the County." But according to

---

pursuant to an agreement with the employee or former employee reserving the rights of the public entity not to pay the judgment, compromise, or settlement until it is established that the injury arose out of an act or omission occurring within the scope of his or her employment as an employee of the public entity, the public entity is required to pay the judgment, compromise, or settlement only if it is established that the injury arose out of an act or omission occurring in the scope of his or her employment as an employee of the public entity."

[6] The joint appendix contains a substitution of attorney form filed in May 2006 indicating that attorney Serverian was replacing attorney Nancy Miller as counsel for defendants Scagliotti, Board, and SBCFC.

[7] Code of Civil Procedure section 526a authorizes a "citizen resident" taxpayer to obtain an injunction restraining and preventing the illegal expenditure of public funds. The primary purpose of that section is "to 'enable a large body of the citizenry to challenge governmental action which would otherwise go unchallenged in the courts because of the standing requirement.' [Citation.]" (*Blair v. Pitchess* (1971) 5 Cal.3d 258, 267-268, & fn. 4.) The section has been extended "to include actions brought by nonresident taxpayers (*Irwin v. City of Manhattan Beach* (1966) 65 Cal.2d 13, 18-20 . . .)." (*Id*. at p. 268.) The Supreme Court has also " permitted taxpayers to sue on behalf of a city or county to recover funds illegally expended. (*Osburn v. Stone* (1915) 170 Cal. 480, 482 . . . .)" (*Ibid*.)

Pekin, attorney Serverian had not withdrawn as counsel pursuant to Code of Civil Procedure section 284. Pekin asked the superior court to find that, prior to trial, "the County *had* to *know* that in defending Scagliotti the County would be vigorously arguing every conceivable ground for the avoidance of the enforcement of the PRA . . . ."

At the hearing on the disqualification motion, attorney Serverian stated that the County was not a party to the case. He argued that there was no conflict of interest since there were "no causes of action in which plaintiff seeks recovery against both [SBCFC] and Richard Scagliotti." He emphasized that he had been involved as counsel in this case since 2006. He asserted that plaintiff was upset because the County has exercised its right to defend one of its former supervisors under section 995.2. The trial court stated that "[t]he premise of [Pekin's] position is that the County has an affirmative duty to enforce the PRA [Political Reform Act], and by defending Scaliotti, that that puts it in a conflict of interest. I think that's his premise." Plaintiff's counsel, Michael Pekin, responded, "Absolutely."

In its written ruling, filed June 25, 2010, the superior court denied Pekin's disqualification motion. The trial court also sustained the objection to Pekin's post-hearing briefs.

The court observed that defendant "Scagliotti was not named as a defendant or charged in Count 4," the only count against the Board and SBCFC. The court stated that the parties had advised it that count four was not under consideration during the present phase of the proceedings. The court had not found any pleading in which attorney Serverian had "answered or responded on behalf of the County."[8] The court determined

---

8     Attorney Serverian filed an answer on behalf of all defendants, including the Board, on October 25, 2007. The identity of a governmental client can be a complicated question. We note that generally "[a] county may exercise its powers only through the board of supervisors or through agents and officers acting under authority of the board or

that Pekin had failed to establish standing to bring the disqualification motion. In any case, attorney Serverian was representing defendants Scagliotti and SBCFC but he was not representing the County, the County Counsel was representing the County, and any payments made by the County to attorney Serverian pursuant to section 995 did not establish a conflict of interest. It found no support in the law for Pekin's contentions that Scagliotti had been proven guilty or admitted noncompliance with the PRA and therefore he was not entitled to a defense under section 995.

The court also stated: "Mr. Serverian has been in this case since 1996. Plaintiff should have made this challenge years ago. Instead, he jawboned the issue and then when we were getting to some issues where this case could have progressed, he filed this challenge. Isn't that laches?"

## II

### *Ruling on Motion to Disqualify Opposing Counsel*

A. *Standard of Review Applicable to Ruling on Motion to Disqualify Counsel*

" 'A trial court's authority to disqualify an attorney derives from the power inherent in every court "[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." [Citations.]' (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145 . . . .) 'Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion. [Citations.]' (*Id*. at p. 1143 . . . .) As to disputed factual issues, a reviewing court's role is simply to determine whether substantial evidence supports the trial court's findings of fact; 'the reviewing court should not substitute its judgment for . . . express or implied [factual] findings [that are] supported by substantial evidence. [Citations.]'

authority conferred by law." (§ 23005.) But here the Board appears to have been sued as the governing body of the SBCFC.

8

(*Ibid.*)  As to the trial court's conclusions of law, however, review is de novo; a disposition that rests on an error of law constitutes an abuse of discretion.  (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712 . . . ; *People v. Superior Court (Humberto S.)* 43 Cal.4th 737, 742.)  The trial court's 'application of the law to the facts is reversible only if arbitrary and capricious.'  (*Haraguchi*, *supra*, at p. 712 . . . .)"[9]  (*In re Charlisse C.* (2008) 45 Cal.4th 145, 159.)

" 'A judgment or order of the lower court is *presumed correct*.  All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.  This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.'  [Citations.]"  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  "[A] reviewing court, should not disturb the exercise of a trial court's discretion unless it appears that there has been a miscarriage of justice."  (*Id.* at p. 566.)

"It has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.'  [Citation.]"  (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.)  "[N]ormally 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered.'  [Citation.]"  (*Vons Companies, Inc. v. Seabest*

---

[9]  On appeal, plaintiff Pekin has proceeded by way of a joint appendix and certified transcripts.  "An appendix must not" "[c]ontain documents or portions of documents filed in superior court that are unnecessary for proper consideration of the issues."  (Cal. Rules of Court, rule 8.124(b)(3)(A).)  The inclusion of unnecessary documents does not alter the scope of our review.  We have not agreed to accept further evidence or make factual determinations.  (See Code Civ. Proc., § 909; Cal. Rules of Court, rules 8.54, 8.252 (b) and (c).)  Pekin did not transform this court into a trier of fact by providing a transcript of trial testimony and other oral proceedings.

*Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.)  Pekin bears the "burden of showing error by an adequate record.  [Citations.]"  (*In re Kathy P.* (1979) 25 Cal.3d 91, 102.)

B.  *Legal and Ethical Responsibilities of Attorneys*

Each attorney who is a member of the California State Bar has a duty to preserve client confidences (Bus. & Prof. Code, § 6068, subd. (e); Cal. State Bar Rules of Prof. Conduct, rule 3–100)[10] and to avoid interests that are adverse to the client's interests (Rules of Prof. Conduct, rules 3–300, 3–310).

"Conflicts of interest commonly arise in one of two factual contexts: (1) in cases of successive representation, where an attorney seeks to represent a client with interests that are potentially adverse to a former client of the attorney; and (2) in cases of simultaneous representation, where an attorney seeks to represent in a single action multiple parties with potentially adverse interests."  (*In re Charlisse C., supra,* 45 Cal.4th 145, 159.)  "Two ethical duties are entwined in any attorney-client relationship.  First is the attorney's duty of confidentiality, which fosters full and open communication between client and counsel, based on the client's understanding that the attorney is statutorily obligated (Bus. & Prof. Code, § 6068, subd. (e)) to maintain the client's confidences. (*SpeeDee*, *supra*, 20 Cal.4th at p. 1146 . . . .)  The second is the attorney's duty of undivided loyalty to the client.  (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 282 . . . .) These ethical duties are mandated by the California Rules of Professional Conduct. (Rules Prof. Conduct, rule 3–310(C) & (E).)"  (*City and County of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839, 846.)

"The primary value at stake in cases of simultaneous or dual representation is the attorney's duty-and the client's legitimate expectation-of loyalty, rather than

---

[10]     All further references to the Rules of Professional Conduct are to the California State Bar Rules of Professional Conduct.

confidentiality." (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 284.) "The principle of loyalty is for the *client's* benefit . . . ." (*Id.* at p. 286, fn. 4.)

A "[c]onflict of interest between jointly represented clients occurs whenever their common lawyer's representation of the one is rendered less effective by reason of his representation of the other." (*Spindle v. Chubb/Pacific Indemnity Group* (1979) 89 Cal.App.3d 706, 713; cf. ABA Model Rules Prof. Conduct, rule 1.7(a).) "The paradigmatic instance of such prohibited dual representation-one roundly condemned by courts and commentators alike-occurs where the attorney represents clients whose interests are *directly* adverse *in the same litigation*." (*Flatt v. Superior Court*, *supra*, 9 Cal.4th at p. 285, fn. 3.)

Rule 3-310(C) of the Rules of Professional Conduct prohibits attorneys from accepting or continuing concurrent representation of clients whose interests actually conflict, absent the "informed written consent" of each client.[11] "Informed written consent" is defined as "the client's or former client's written agreement to the representation following written disclosure . . . ." (Rules Prof. Conduct, rule 3-310(A)(2).) "[T]he purpose of the rules against representing conflicting interests is not

_____

[11]    Rule 3-310(C) of the Rules of Professional Conduct states in pertinent part: "A member shall not, *without the informed written consent of each client*: [¶] (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or [¶] (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict . . . ." (Italics added.) "Subparagraphs (C)(1) and (C)(2) [of Rule 3-310] are intended to apply to all types of legal employment, including the concurrent representation of multiple parties in litigation . . . . In such situations, for the sake of convenience or economy, the parties may well prefer to employ a single counsel, but a member must disclose the potential adverse aspects of such multiple representation [citation] and must obtain the informed written consent of the clients thereto pursuant to subparagraph (C)(1). Moreover, if the potential adversity should become actual, the member must obtain the further informed written consent of the clients pursuant to subparagraph (C)(2)." (Discussion foll. Rules Prof. Conduct, rule 3-310.)

only to prevent dishonest conduct, but also to avoid placing the honest practitioner in a position where he may be required to choose between conflicting duties or attempt to reconcile conflicting interests. [Citations.]" (*Woods v. Superior Court* (1983) 149 Cal.App.3d 931, 936.)

The official discussion following Rule 3-310 of the Rules of Professional Conduct recognizes that "[t]here are some matters in which the conflicts are such that written consent may not suffice for non-disciplinary purposes. (See *Woods v. Superior Court* (1983) 149 Cal.App.3d 931 . . . ; *Klemm v. Superior Court* (1977) 75 Cal.App.3d 893 . . . ; *Ishmael v. Millington* (1966) 241 Cal.App.2d 520 . . . .)" A court observed in *Klemm v. Superior Court* (1977) 75 Cal.App.3d 893, 898: "Though an informed consent be obtained, no case we have been able to find sanctions dual representation of conflicting interests if that representation is in conjunction with a trial or hearing where there is an actual, present, existing conflict and the discharge of duty to one client conflicts with the duty to another. [Citations.]" Under Rule 1.7(b)(1) of the American Bar Association (ABA) Model Rules of Professional Conduct,[12] representation is prohibited even with a client's consent "if in the circumstances the lawyer cannot reasonably conclude that the lawyer will be able to provide competent and diligent representation. See Rule 1.1 (competence) and Rule 1.3 (diligence)." (ABA Model Rules Prof. Conduct, Com. to Rule 1.7, para. [15].)

C. *Lack of Standing to Bring Motion to Disqualify Attorney*

"Standing generally requires that the plaintiff be able to allege injury, that is, an invasion of a legally protected interest. (*Angelucci v. Century Supper Club* (2007) 41

---

[12]    "[A]lthough California has not adopted the ABA Model Rules, they may be 'helpful and persuasive in situations where the coverage of our Rules is unclear or inadequate.' [Citations.]" (*Frye v. Tenderloin Housing Clinic, Inc.* (2006) 38 Cal.4th 23, 52, fn. 12.)

Cal.4th 160, 175 . . . .)" (*Great Lakes Const., Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1356.)  In this appeal, we are not concerned with Pekin's general standing to sue.

"A 'standing' requirement is implicit in disqualification motions.  Generally, before the disqualification of an attorney is proper, the complaining party must have or must have had an attorney-client relationship with that attorney.  (*Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc.* (1999) 69 Cal.App.4th 1399, 1404 . . . .)"  (*Great Lakes Const., Inc. v. Burman, supra,* 186 Cal.App.4th at p. 1356.)

As indicated, in the court below, plaintiff Pekin claimed to have standing to bring the disqualification motion as a section 526a taxpayer plaintiff.  He argued that the "County's payment for joint representation of the County and of the official in violation of the PRA is an illegal expenditure of public funds" and taxpayers have standing "to take legal action against illegal expenditure of public funds."  While Pekin recites this standing argument in his opening brief's procedural history section, he seems to abandon it on appeal since the brief's argument section does not address the standing issue.  He raises the section 526a argument for the first time on appeal in a reply brief.  Pekin also baldly asserts in a reply brief  that his standing to sue under the PRA "certainly encompasses standing to bring the instant Motion to Disqualify Mr. Serverian" and cites *Kunec v. Brea Redevel. Agency* (1997) 55 Cal.App.4th 511.  In a supplemental reply brief, Pekin contends for the first time that "the representations Mr. Serverian has made to the Trial Court, and to this Court, denying his representation of the County; and the conflict of interest presented by his joint, concurrent representation of Defendants Scagliotti and the County, are ethical breaches that so infect the litigation that it impacts [his] interest in a just and lawful determination of [his] anti-corruption claims."

" '[T]he rule is that points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before.  [Citations.]' [Citation.]"  (*People v. Smithey* (1999) 20 Cal.4th 936, 1017, fn. 26.)  "Obvious reasons

13

of fairness militate against consideration of an issue raised initially in the reply brief of an appellant. [Citations.]" (*Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295-296, fn. 11.)

Moreover, to the extent that Pekin now presents new theories of standing to overturn the court's ruling, they are deemed forfeited. "Appellate courts will generally not consider new theories raised for the first time on appeal. (*In re Marriage of Moschetta* (1994) 25 Cal.App.4th 1218, 1227 . . . .)" (*RN Solution, Inc. v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511, 1518; see *Panopulos v. Maderis* (1956) 47 Cal.2d 337, 341 ["the general rule is especially true when the theory newly presented involves controverted questions of fact or mixed questions of law and fact"].)

In any case, none of plaintiff's standing arguments have merit. Even if Pekin has standing to sue under the PRA or section 526a, it does not follow that such standing automatically confers standing on a plaintiff to bring a motion to disqualify *opposing* counsel. We have seen no authority to that effect and the cases cited by Pekin do not address this issue. Moreover, as we discuss in more detail below, the County's provision for Scagliotti's defense is authorized by statute (§§ 995, 996) and cannot be deemed an "illegal expenditure" of the County's funds.

We are aware of existing case law suggesting that a nonclient party may have standing to bring a motion to disqualify opposing counsel to protect the integrity of the judicial process in particularly egregious situations where continued representation affects the fair adjudication of the party's claims. For example, in *Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197, the plaintiff mother had standing in a paternity action to bring a motion to disqualify opposing counsel who represented the defendant father even though she had never been a client of opposing counsel or his law firm. The action involved child custody and support issues, the plaintiff was the child's mother, the defendant was the child's father, and opposing counsel was the paternal grandfather. (*Id.*

14

at pp. 1200-1201.) Opposing counsel's law firm had previously represented the maternal grandfather in a divorce case and confidential information obtained in that case could be potentially misused against the plaintiff mother in the pending case. (*Id*. at pp. 1202, 1204-1209.)

In *Colyer v. Smith* (C.D. Cal. 1999) 50 F.Supp.2d 966, which Pekin belatedly cites, a federal court considered a plaintiff's motion to disqualify opposing counsel. The court stated: "Generally, only the former or current client will have such a stake in a conflict of interest dispute. . . . However, . . . in a case where the ethical breach so infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of her claims, she may have the constitutional standing needed to bring a motion to disqualify based on a third-party conflict of interest or other ethical violation. In such a case, moreover, the prudential barrier to litigating the rights and claims of third parties should not stop a district court from determining the motion, because such a limitation would be overcome by the court's inherent obligation to manage the conduct of attorneys who appear before it and to ensure the fair administration of justice. [Citation.] . . . Where the ethical breach is so severe that it 'obstructs the orderly administration of justice,' the party who finds his claims obstructed has standing. [Citation.]" (*Id*. at pp. 971-972.)

Although the federal court in *Colyer* recognized this nonclient theory of standing to bring a motion to disqualify counsel, it denied the plaintiff's disqualification motion because the plaintiff had failed to make an adequate showing of standing. (*Id*. at pp. 972-973.) The court stated: "[Colyer's] broad interest in the administration of justice is insufficiently concrete and particularized to support a finding of standing here. The alleged conflict—if it exists—simply does not rise to the level where it infects the proceedings and threatens Colyer's individual right to a just determination of his claims." (*Id*. at p. 973.) The court also observed that "[t]he standing requirement protects against

the strategic exploitation of the rules of ethics long disfavored by the Courts. [Citations.]" (*Ibid*.; cf. *S.E.C. v. King Chuen Tang* (N.D. Cal. 2011) 831 F.Supp.2d 1130, 1143 [SEC did not have standing to bring a motion to disqualify opposing counsel where it had no personal stake beyond the general interest in the fair administration of justice].)

In this case, plaintiff Pekin failed to assert or make any showing in the motion below that attorney Serverian's representation of his clients directly threatens or impairs Pekin's "right to a just determination of his claims" (*Colyer v. Smith*, *supra*, 50 F.Supp.2d at p. 973). Pekin has not affirmatively demonstrated that the trial court erred in determining he lacked standing.

D. *Substantive Merits*

Pekin's substantive arguments fail as well.

1. *No Actual Conflict Established Based on Provision for Scagliotti's Defense*

Insofar as we can discern, Pekin's theory that attorney Serverian was concurrently representing the County and Scagliotti was partly based upon the County's provision of a defense to Scagliotti through attorney Serverian pursuant to section 995.

Section 995 provides: "Except as otherwise provided in Sections 995.2 and 995.4, upon request of an employee or former employee, a public entity shall provide for the defense of any civil action or proceeding brought against him, in his official or individual capacity or both, on account of an act or omission in the scope of his employment as an employee of the public entity."[13] Section 995.2 states several discretionary grounds for

---

[13] "[T]he Tort Claims Act was enacted in order to provide a comprehensive codification of the law of governmental liability and immunity in California. [Citation.] As part of its overall statutory scheme, the Tort Claims Act provides that in the usual civil case brought against a public employee, a public entity is required to defend the action against its employee (Gov. Code, § 995 et seq.) and to pay any claim or judgment against the employee in favor of the third party plaintiff (§ 825 et seq.). A principal purpose of the indemnification statutes is to assure 'the zealous execution of official duties by public employees.' (*Johnson v. State of California* (1968) 69 Cal.2d 782,

16

refusing to comply with the mandatory duty imposed by section 995.[14]  Section 995.4 establishes a public entity's permissive authority to provide for the defense of actions or proceedings brought by a public entity against its own employees or former employees when seeking to "remove, suspend, or otherwise penalize" them or when taking action against them as individuals.  Where a public entity provides a defense upon request, it may do so "by its own attorney or by employing other counsel for this purpose or by purchasing insurance which requires that the insurer provide the defense."  (§ 996.)

Pekin seems to be suggesting that the County's relationship with Scagliotti and attorney Serverian under section 995 is analogous to the contractual relationship between an insurer, insured, and the attorney provided by the insurer to defend the insured.  In the insurance context, courts have concluded that an attorney hired by an insurer to defend an insured "represents two clients, the insured and the insurer.  (*Lysick v. Walcom* (1968) 258 Cal.App.2d 136, 146 . . . .)"  (*State Farm Mut. Auto. Ins. Co. v. Federal Ins. Co.* (1999) 72 Cal.App.4th 1422, 1429.)  "In the absence of a conflict of interest between the insurer and the insured that would preclude an attorney from representing both, the attorney has a dual attorney-client relationship with insurer and insured.  (*Unigard Ins. Group v. O'Flaherty & Belgum*, *supra*, 38 Cal.App.4th at pp. 1236-1237.)"  (*Ibid.*)  "[I]t

---

792 . . . .)"  (*Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1001, fn. omitted.)

[14]     Under section 995.2, "[a] public entity *may* refuse to provide for the defense of a civil action or proceeding brought against an employee or former employee if the public entity determines any of the following:  [¶]  (1) The act or omission was not within the scope of his or her employment.  [¶]  (2) He or she acted or failed to act because of actual fraud, corruption, or actual malice.  [¶]  (3) The defense of the action or proceeding by the public entity would create a specific conflict of interest between the public entity and the employee or former employee."  (§ 995.2, subd. (a), italics added; see § 14 [" 'may' is permissive"].)  "For the purposes of this section, 'specific conflict of interest' means a conflict of interest or an adverse or pecuniary interest, as specified by statute or by a rule or regulation of the public entity."  (§ 995.2, subd. (a)(3).)

is customary for the insurer to control the defense it provides. (*Spindle v. Chubb/Pacific Indemnity Group* (1979) 89 Cal.App.3d 706, 714 . . . .)" (*Ibid.*)

In the well known case of *San Diego Navy Federal Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 ("*Cumis*"), the court stated: "In the usual tripartite relationship existing between insurer, insured and counsel, there is a single, common interest shared among them. Dual representation by counsel is beneficial since the shared goal of minimizing or eliminating liability to a third party is the same. A different situation is presented, however, when some or all of the allegations in the complaint do not fall within the scope of coverage under the policy. In such a case, the standard practice of an insurer is to defend under a reservation of rights where the insurer promises to defend but states it may not indemnify the insured if liability is found. In this situation, there may be little commonality of interest." (*Id.* at p. 364, fn. omitted.) "A conflict arises once the insurer takes the view a coverage issue is present." (*Id.* at p. 370.)

In *Cumis*, the court held: "[T]he Canons of Ethics impose upon lawyers hired by the insurer an obligation to explain to the insured and the insurer the full implications of joint representation in situations where the insurer has reserved its rights to deny coverage. If the insured does not give an informed consent to continued representation, counsel must cease to represent both. Moreover, in the absence of such consent, where there are divergent interests of the insured and the insurer brought about by the insurer's reservation of rights based on possible noncoverage under the insurance policy, the insurer must pay the reasonable cost for hiring independent counsel by the insured. The insurer may not compel the insured to surrender control of the litigation (*Tomerlin v. Canadian Indemnity Co.*, *supra*, 61 Cal.2d 638, 648 . . . ; and see *Nike, Inc. v. Atlantic Mut. Ins. Co.* (1983) 578 F.Supp. 948, 949). Disregarding the common interests of both insured and insurer in finding total nonliability in the third party action, the remaining interests of the two diverge to such an extent as to create an actual, ethical conflict of

18

interest warranting payment for the insureds' independent counsel." (*Cumis*, *supra*, 162 Cal.App.3d at p. 375.) An insured's independent counsel in this situation is commonly referred to as *Cumis* counsel. (See *Simmons v. Ghaderi* (2008) 44 Cal.4th 570, 575, fn. 2.)

The holding in *Cumis* has long been codified and partly superseded by statute.[15] (See Civ. Code, § 2860.) Under the statute, an insured may waive any right to select independent counsel. (Civ. Code, § 2860, subd. (e).)

More recent insurance cases clarify that provision of a defense with a reservation of rights does not necessarily create a conflict of interest between an insurer and an insured that entitles the insured to independent counsel. (See e.g. *Gafcon, Inc. v. Ponsor & Assocs.* (2002) 98 Cal.App.4th 1388, 1421-1422 ["a conflict of interest does not arise every time the insurer proposes to provide a defense under a reservation of rights"; an insured is not entitled independent counsel if the issue of coverage is independent of or extrinsic to the issues in third party action]; *Dynamic Concepts, Inc. v. Truck Ins. Exchange* (1998) 61 Cal.App.4th 999, 1007 ["A mere possibility of an unspecified conflict does not require independent counsel"].)

Even assuming that the County selected attorney Serverian and was paying for his services in defending Scagliotti and such representation is analogous to representation of an insured (but see *Laws v. County of San Diego* (1990) 219 Cal.App.3d 189, 191-192, 197-201 [refusing to require a County to provide independent counsel to officers being

---

[15]     The statute recognizes that "a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage; however, when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest *may* exist." (Civ. Code, § 2860, subd. (b), italics added.) It states: "No conflict of interest shall be deemed to exist as to allegations of punitive damages or be deemed to exist solely because an insured is sued for an amount in excess of the insurance policy limits." (*Ibid.*)

19

sued for police misconduct based upon a *Cumis*-type analysis]), those facts do not in themselves establish an actual conflict of interest. Rules of Professional Conduct, rule 3-310(F) generally provides: "A member shall not accept compensation for representing a client from one other than the client *unless*: [¶] (1) There is no interference with the member's independence of professional judgment or with the client-lawyer relationship; and [¶] (2) Information relating to representation of the client is protected as required by Business and Professions Code section 6068, subdivision (e); and [¶] (3) The member obtains the client's informed written consent . . . ."[16] (Italics added.) The official discussion following that rule states: "Paragraph (F) is not intended to abrogate existing relationships between insurers and insureds whereby the insurer has the contractual right to unilaterally select counsel for the insured, where there is no conflict of interest. (See *San Diego Navy Federal Credit Union v. Cumis Insurance Society* (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494].)"

Plaintiff Pekin failed to establish below that the County's provision for Scagliotti's defense under a reservation of rights created an actual conflict of interest between them in the litigation. Even assuming the County was paying for attorney Serverian's services in representing Scagliotti, Pekin did not demonstrate that this circumstance interfered with Serverian's independent professional judgment, impaired his representation of a client, compromised his duty of loyalty to a client, or required him to improperly divulge confidences of a client (see Bus. & Prof. Code, § 6068, subd. (e), Rules of Professional Conduct, rule 3-100; cf. Civ. Code, § 2860, subd. (f); ABA Model Rules Prof. Conduct, Com. on Rule 1.7, para. [13] [Interest of Person Paying for a Lawyer's Service]). Further, Pekin did not show that attorney Serverian had not obtained any informed written consent

---

[16]     Under Business and Professions Code section 6068, subdivision (e), an attorney has the general duty to "maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client."

necessary to enable him to represent Scagliotti in this action. Evidence that the County was providing a defense for Scagliotti pursuant to section 995 was not enough to prove an actual conflict of interest disqualifying attorney Serverian from representing defendant Scagliotti.

2. *Attorney Serverian's Representation of SBCFC*

Although the eighth amended complaint alleged that SBCFC was a "shell" and a "dummy corporation," Pekin's disqualification motion was *not* predicated on the theory that the County and its "wholly owned subsidiary" should be treated as the same entity for purposes of analyzing whether an actual conflict of interest existed. (Cf. *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft* (1999) 69 Cal.App.4th 223, 227 [sufficient "unity of interest" between parent corporation and wholly owned subsidiary to treat them as one entity for conflict purposes]; *Brooklyn Navy Yard Cogeneration Partners, L.P. v. Superior Court (Parsons Corp.)* (1997) 60 Cal.App.4th 248, 253 ["only in those limited circumstances where one corporation is the alter ego of the other should parent and subsidiary corporations be treated as the same entity for conflict purposes"].) Ordinarily, a shareholder of a corporation, even one that owns all the stock, is not automatically the client of the corporation's attorney. (See *Brooklyn Navy Yard Cogeneration Partners, L.P. v. Superior Court (Parsons Corp.)*, *supra*, 60 Cal.App.4th at pp. 254-255; see also Rules of Prof. Conduct, rule 3-600.)

In any case, plaintiff Pekin indicated in his disqualification motion, and he reiterates on appeal, that he is not claiming that there is an actual conflict of interest between Scagliotti and the SBCFC.

3. *Code of Civil Procedure Section 284*

Plaintiff Pekin's argument with regard to section 284 of the Code of Civil Procedure is rather obtuse, but, insofar as we can discern, he is arguing that, since attorney Serverian did not properly withdraw as provided by that section, he continues to

21

concurrently represent the County and Scagliotti. The argument seems to be an attempt to refute attorney Serverian's claim that he represented only the SBCFC and not the County.

Code of Civil Procedure section 284 provides: "The attorney in an action or special proceeding may be changed at any time before or after judgment or final determination, as follows: [¶] 1. Upon the consent of both client and attorney, filed with the clerk, or entered upon the minutes; [¶] 2. Upon the order of the court, upon the application of either client or attorney, after notice from one to the other." Code of Civil Procedure section 285 states: "When an attorney is changed, as provided in the last section, written notice of the change and of the substitution of a new attorney, or of the appearance of the party in person, must be given to the adverse party. Until then he must recognize the former attorney." The purpose of these statutes "is to have the record of representation clear so the parties may be certain with whom they are authorized to deal." (*People v. Metrim Corp.* (1960) 187 Cal.App.2d 289, 294.)

Pekin's argument regarding the failure to properly substitute counsel adds nothing to his contention that an actual conflict of interest arose from the County's provision for Scagliotti's defense, a claim that we have already rejected.

In his reply brief, Pekin's substitution of counsel argument transforms into a claim that attorney Serverian failed to properly withdraw from representing the Board and, therefore, he continues to concurrently represent the *County* and Scagliotti. Pekin did not make this claim either below or in his opening appellate brief.

As the moving party, the burden was on Pekin to clearly articulate his claims and then present sufficient evidence to substantiate them in the court below. (See Evid. Code, §§ 500, 550.) Pekin did not argue that attorney Serverian was continuing to represent the Board despite indications that he no longer did and his ongoing concurrent representation of the Board and Scagliotti involved a prohibited actual conflict of interest. New theories

22

involving unresolved questions of fact cannot be advanced for the first time on appeal. (See *Panopulos v. Maderis*, *supra*, 47 Cal.2d at p. 341.) Moreover, this contention was cogently raised for the first time in the reply brief and we deem it forfeited. (See *People v. Smithey* , *supra*, 20 Cal.4th at p. 1017, fn. 26; *Varjabedian v. City of Madera*, *supra*, 20 Cal.3d at p. 295, fn. 11.)

In any case, we point out that the Rules of Professional Responsibility provide that "[i]n representing an organization, a member [of the State Bar] shall conform his or her representation to the concept that the client is the organization itself, acting through its highest authorized officer, employee, body, or constituent overseeing the particular engagement." (Rules Prof. Conduct, rule 3-600(A).) "In dealing with an organization's directors, officers, employees, members, shareholders, or other constituents, a member shall explain the identity of the client for whom the member acts, whenever it is or becomes apparent that the organization's interests are or may become adverse to those of the constituent(s) with whom the member is dealing." (Rules Prof. Conduct, rule 3-600(D).) An attorney representing an organization may additionally "represent any of its directors, officers, employees, members, shareholders, or other constituents, subject to the provisions of rule 3-310." (Rules Prof. Conduct, rule 3-600(E); cf. ABA Model Rules Prof. Conduct, rule 1.13(g).)

The fourth cause of action seeks to "compel the San Benito County Board of Supervisors, doing business as the San Benito County Financing Corp., to conduct an audit and stop waste of the public fisc . . . ." It appears that the Board is being sued in its capacity as the SBCFC's Board of Directors. We see no cause of action against the Board acting as the governing body of the County as a whole. Attorney Serverian appears to be representing the SBCFC, acting through its governing body. As indicated, Pekin has disclaimed any conflict of interest between SBCFC and Scagliotti. In addition, the superior court indicated that the parties had agreed that the fourth cause of action, the

23

only cause of action against the Board, was not at issue during the current phase of the proceedings.

Plaintiff Pekin failed to demonstrate below that there was any actual conflict of interest related to or arising from Serverian's alleged noncompliance with Code of Civil Procedure section 284.

4. *Alleged Conflict with the Public Interest*

In the court below, plaintiff Pekin argued in his moving papers that "[t]he specific conflict of interest of joint [County]/Scagliotti defense is that between Mr. Serverian's efforts to avoid Defendant Scagliotti's liability for [section] 1090 and PRA violations and the mandated interest of the public entity to protect the public trust . . . ." He now contends that he established that attorney Serverian's representation of his clients involved an "actual conflict of interest . . . in the vigorous enforcement of [section] 1090 and the PRA . . . ." Pekin now acknowledges that attorney Serverian's interpretation of section 995.2 as permissive is "literally correct" but he nevertheless insists that "Mr. Serverian must be removed for actual conflict of interest with the public interest in the vigorous enforcement of [section] 1090 and the PRA, notwithstanding the wording of [section] 995.2."

The term "conflict of interest" has a particular meaning under the Rules of Professional Conduct. "[A] conflict of interest exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests." (ABA Model Rules Prof. Conduct, Com. on Rule 1.7, para. [8].) A critical question is whether clients' differing interests "will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client" (*ibid.*) or render the lawyer's representation less effective (*Spindle v. Chubb/Pacific Indemnity Group*, *supra*,

24

89 Cal.App.3d at p. 713). The public at large or the "public interest" is not attorney Serverian's client for purposes of analyzing whether he should be disqualified based upon an actual conflict of interest between his clients.

Even if the County has a broad interest in protecting the public and enforcing the PRA in the abstract, its concrete interests in this particular litigation are more limited. The Eighth Amended Complaint indicates that the County's civil prosecutor declined to commence an action under the PRA against Scagliotti. The County's main interest in this litigation appears to be avoiding a judgment against Scagliotti for which it would become indirectly liable under section 825 and for which it could not be indemnified (see §§ 825.4, 825.6).

"The civil prosecutor is primarily responsible for enforcement of the civil penalties and remedies" of the PRA. (§ 91001, subd. (b); see §§ 91004, 91005.) "Any person, before filing a civil action pursuant to Sections 91004 and 91005, must first file with the civil prosecutor a written request for the civil prosecutor to commence the action. The request shall include a statement of the grounds for believing a cause of action exists. The civil prosecutor shall respond to the person in writing, indicating whether he or she intends to file a civil action." (§ 91007, subd. (a).) The person may not proceed with a civil action pursuant to those sections if the civil prosecutor timely decides to bring an action. (See § 91007, subd. (a); see also *Gananian v. Wagstaffe* (2011) 199 Cal.App.4th 1532, 1537, fn. 6 ["Upon the party's request, the prosecutor's office can either file suit or decline to file suit but it cannot prevent the party from commencing suit if it decides not to proceed"].) A civil prosecutor has no mandatory duty, however, to bring an enforcement action pursuant to section 91004 or 91005 and a civil prosecutor's decision whether to bring such an action cannot be challenged. (See *Dunn v. Long Beach Land & Water Co.* (1896) 114 Cal. 605, 609.)

25

Plaintiff Pekin has not demonstrated that he is directly enforcing or representing the County's rights under the PRA. If Pekin prevails on his claims against Scagliotti brought pursuant to section 91004 or 91005, he will obtain a financial benefit for himself but not for the County. (See § 91009; see also *ante*, fn. 3.)

Insofar as Pekin's first cause of action of his eighth amended complaint alleged that a three year vehicle maintenance contract between the County and San Benito Tire violated section 1090 and sought to recover from Scagliotti the money paid by the County to San Benito Tire under the allegedly void contract, we assume that Pekin is seeking recovery on behalf of the County since the prayer for relief characterizes the recovery as "restitution." (See generally *Thomson v. Call* (1985) 38 Cal.3d 633, 646-652 [taxpayers' suit challenging validity of city council member's sale of property to city through corporate conduit].) But in this cause of action, as with all other causes of action against Scagliotti, neither the County nor any constituent part is a defendant. Pekin failed to demonstrate that Serverian's role as legal advocate for defendant Pekin actually conflicted with any legal or ethical responsibility that Serverian owed to the County by virtue of its provision for Scagliotti's defense.

We reject Pekin's argument that attorney Serverian must be disqualified from representing defendant Scagliotti based on "an actual conflict of interest with the public interest in the vigorous enforcement of [section] 1090 and the PRA."

5. *Delay in Bringing Motion*

On appeal, Pekin "concedes that Mr. Serverian substituted into the case in early May, 2006 . . . ." He asserts that the approximate four year delay in bringing the disqualification motion was excusable because the delay was "caused by Defendants' connivance with duress." He argues that the factual proof of that connivance was presented in his disqualification motion by incorporating another motion, which was entitled "Defendants' connivance with duress upon Plaintiff, Plaintiff's Spouse and

26

Counsel bars Defendants from taking advantage of any affirmative defense in this case" and was filed on the same day as his disqualification motion. In the court below, Pekin acknowledged in his reply to opposition to his disqualification motion that attorney Serverian had disclosed in a letter, dated October 6, 2006, that the County was providing both defense and indemnification to Scagliotti.[17]

The trial court stated that Pekin "should have made this challenge years ago." Its comments imply that it found that Pekin brought the motion for delay purposes and the alleged misconduct of defendants did not excuse Pekin from bringing such motion at an earlier time. It is not our role to reweigh the evidence. (See *Estate of Teel* (1945) 25 Cal.2d 520, 527.) Pekin has failed to demonstrate that the trial court acted outside the bounds of reason in denying the motion in part because it concluded the motion was a delay tactic.

A party's tactical abuse of a disqualification motion is a valid consideration in ruling on such a motion. (See *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145; *Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 300-301) " '[A]s courts are increasingly aware, motions to disqualify counsel often pose the very threat to the integrity of the judicial process that they purport to prevent. [Citation.] Such motions can be misused to harass opposing counsel [citation], to delay the litigation [citation], or to intimidate an adversary into accepting settlement on terms that would not otherwise be acceptable. [Citations.] In short, it is widely understood by judges that 'attorneys now commonly use

---

[17] This letter was an exhibit to Pekin's "connivance with duress" motion. The letter, which is from attorney Serverian to plaintiff Pekin's counsel (Michael Pekin), states that the County is providing a defense and indemnification to Scagliotti in this case and indicates that the County issued a reservation of rights letter that requires Scagliotti to reasonably cooperate in his defense and the County will be required to pay any non-punitive damages award if Scagliotti cooperates in his defense.

disqualification motions for purely strategic purposes . . . .' [Citations.]" (*Gregori v. Bank of America*, *supra*, 207 Cal.App.3d at pp. 300-301, fns. omitted.)

The trial court also queried whether the delay constituted laches. "The defense of laches requires unreasonable delay plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay." (*Conti v. Board of Civil Service Commissioners* (1969) 1 Cal.3d 351, 359, fns. omitted.) "Prejudice is never presumed; rather it must be affirmatively demonstrated by the defendant in order to sustain his burdens of proof and the production of evidence on the issue. ([*Conti v. Board of Civil Service Commissioners* (1969) 1 Cal.3d 351,] 361 . . . .)" (*Miller v. Eisenhower Medical Center* (1980) 27 Cal.3d 614, 624.) "Generally speaking, the existence of laches is a question of fact to be determined by the trial court in light of all of the applicable circumstances, and in the absence of manifest injustice or a lack of substantial support in the evidence its determination will be sustained. [Citations.]" (*Ibid.*) A court may decline to apply an equitable defense of laches if its application would nullify an important policy adopted for the benefit of the public. (See *County of Los Angeles v. Berk* (1980) 26 Cal.3d 201, 222.)

We find it unnecessary to decide whether the trial court could properly apply the doctrine of laches since it made no definitive ruling. It is evident that the court's ruling was correct on other dispositive grounds and should be upheld. (See *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19; see also *Maruman Integrated Circuits, Inc. v. Consortium Co.* (1985) 166 Cal.App.3d 443, 450-451 [upholding denial of motion to disqualify opposing counsel].)

28

## III

### *Attorney's Fees*

Pekin asks this court to determine that his counsel is entitled to attorney's fees and costs pursuant to section 91012 and to then remand the matter to the trial court with instructions to determine the amount of the award.

Section 91012 is an exception to the general rule that a litigant is not entitled to recover attorney's fees from an opposing party. (See Code Civ. Proc., § 1021.) It provides: "The court may award to a plaintiff or defendant other than an agency, who prevails in any action authorized by [the PRA] his costs of litigation, including reasonable attorney's fees. On motion of any party, a court shall require a private plaintiff to post a bond in a reasonable amount at any stage of the litigation to guarantee payment of costs." (§ 91012.) "[T]he primary purpose of the prevailing party attorneys' fee provisions of the Political Reform Act is to encourage private litigation enforcing the Act." (*People v. Roger Hedgecock for Mayor Com.* (1986) 183 Cal.App.3d 810, 816.)

The ruling on a motion to disqualify counsel was not a final determination of the merits of this litigation. At this point in the proceedings, Pekin has not established that he is the prevailing party for purposes of section 91012.[18] He is not the prevailing party in this appeal.

## DISPOSITION

The trial court's order denying Pekin's motion to disqualify attorney Serverian is affirmed. Appellant Pekin shall bear the costs of appeal.

---

[18] We find it unnecessary to reach respondents' assertion that attorney Michael Pekin, Pekin's counsel, waived any right to attorney's fees while being deposed.

29

_____

ELIA, J.

WE CONCUR:

_____

RUSHING, P .J.

_____

GROVER, J.