[Civ. No. 51925. Second Dist., Div. Three. Jan. 25, 1979.]

DAVID K. SPINDLE, Plaintiff and Appellant, v.
CHUBB/PACIFIC INDEMNITY GROUP, Defendant and Respondent.

708

**COUNSEL**

Tredway, Brandmeyer, Ward, Torribio & Brazelton and John A. Torribio for Plaintiff and Appellant.

Horvitz, Greines & Poster, Ellis J. Horvitz, Irving H. Greines and Miriam A. Tigerman for Defendant and Respondent.

---

**OPINION**

**COBEY, Acting P. J.**—Plaintiff, David K. Spindle, M.D., appeals from a judgment of dismissal (Code Civ. Proc., § 581d), made following the sustaining of the general demurrers of the defendant, Chubb/Pacific Indemnity Group, to plaintiff's first amended complaint for fraud and for bad faith. The demurrer to the fraud count was sustained without leave to amend; that to the bad faith count was sustained with leave to amend within 30 days. Plaintiff, however, chose not to amend within the specified time and on defendant's motion the just-mentioned judgment of dismissal, pursuant to Code of Civil Procedure, section 581, subdivision 3, was made and entered.

We propose to affirm this judgment of dismissal for reasons that follow.

### SUMMARY OF PERTINENT CHARGING ALLEGATIONS OF THE CHALLENGED PLEADING

The pertinent charging allegations of the fraud count in the first amended complaint may be generally summarized as follows: On or about December 19, 1968, defendant insurer sold to plaintiff, a neurosurgeon, a professional liability insurance policy providing a maximum coverage of $1 million. During the life of this policy a malpractice action was commenced on or about December 1, 1971 by one Betty Burke against plaintiff and against an orthopedic surgeon, Dr. Chester C. McReynolds, who also carried malpractice insurance issued by defendant in the maximum of $500,000. Both doctors demanded that defendant provide them with a defense in the Burke case and defendant thereupon retained the law firm of Kirtland & Packard to represent both its insureds in the Burke case. On or about February 9, 1972, defendant informed plaintiff of the employment of this counsel.

On or about September 5, 1972, defendant's employee, R. F. Cardin, wrote plaintiff and, among other things, then advised him that there appeared to be no conflict of interest between the two doctors in the lawsuit and that it would be more economical for them to share the costs of their defense rather than to have each represented by separate counsel.

According to plaintiff, this representation of defendant was false because defendant then knew (but plaintiff did not then know) that the interests of the two insureds conflicted in that (1) they had different maximum amounts of insurance protection; (2) defendant had reinsured them differently—for plaintiff, everything above $25,000; for Dr. McReynolds, everything above $200,000; (3) their respective potentials for liability differed. Plaintiff then alleged that defendant made this misrepresentation to him with the intent to defraud and deceive him and to induce him, in effect, to continue to accept Kirtland & Packard's joint representation of himself and Dr. McReynolds in the Burke case.

According to plaintiff, plaintiff Burke, prior to the verdict in her suit against the two insureds of defendant, would have settled the entire case for $350,000 and prior to the making of this settlement offer by her, Dr. McReynolds had directed defendant to settle the case within the limits of his $500,000 policy. Thereafter the jury in the Burke case returned a verdict against both of defendant's insureds, jointly and severally, in the amount of $404,000. According to plaintiff, this would not have happened had he had representation, separate from that of Dr. McReynolds because in that situation the entire case would have been settled under the McReynolds' policy and dismissed as to him.

According to plaintiff he suffered at least $2,043,000 specified compensatory damages (primarily from his emotional distress) because of defendant's improper joint defense of him in the Burke case and since defendant engaged in this conduct maliciously and with wanton disregard of plaintiff's rights and feelings, plaintiff thereby became entitled to punitive damages from defendant in the amount of $5 million.

Plaintiff incorporated his entire fraud count into his bad faith count. In addition plaintiff alleged in this second count that defendant did not keep him informed of the constant advice it received from Kirtland & Packard prior to and during the trial of the Burke case, which indicated that Dr. McReynolds' potential for liability in that case was much greater than that of plaintiff, nor of the course of the settlement efforts in the Burke case. In this connection plaintiff alleged, among other things, that defendant neither informed him of the aforementioned $350,000 settlement offer from Mrs. Burke, nor of the fact that subsequently Dr. McReynolds and Mrs. Burke settled her claims against him for $300,000.

Plaintiff further alleged that defendant breached the covenant of good faith and fair dealing within its policy with him by failing to advise him

of the earlier-mentioned conflicts of interest between himself and Dr. McReynolds, in not providing him in the Burke case with independent legal counsel, in controlling his defense by Kirtland & Packard in that case and in failing to settle the Burke case against both of its insureds within the limit of Dr. McReynolds' policy of $500,000.

DISCUSSION

A. *Preliminary Observations*

■ In passing upon the propriety of the trial court's order sustaining defendant's general demurrers to the fraud count and to the bad faith count, we must bear in mind that the demurrer to the fraud count was sustained without leave to amend, while that to the bad faith count was sustained with leave to amend and plaintiff chose not to do so. The consequence of this difference in ruling is that, with respect to the fraud count, its allegations must be liberally construed with a view to substantial justice between the parties as required by Code of Civil Procedure, section 452. But, as regards the second count, it must be assumed that plaintiff has pled that count as strongly as he can and its allegations will be construed against him. (See *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 572-573, fn. 4 [108 Cal.Rptr. 480, 510 P.2d 1032].)

As regards the fraud count, we must uphold it as against a general demurrer if its allegations suggest any possible viable cause of action. In this connection defects in pleading that do not affect substantial rights and errors in the form of essential allegations must be disregarded. (See Code Civ. Proc., § 475; *Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110, 123 [109 Cal.Rptr. 799, 514 P.2d 111]; *Brousseau* v. *Jarrett* (1977) 73 Cal.App.3d 864, 870-871 [141 Cal.Rptr. 200]; *Dale* v. *City of Mountain View* (1976) 55 Cal.App.3d 101, 105 [127 Cal.Rptr. 520]; *Culcal Stylco, Inc.* v. *Vornado, Inc.* (1972) 26 Cal.App.3d 879, 883 [103 Cal.Rptr. 419].)[1]

B. *The Fraud Count*

■ Defendant contends that plaintiff has not alleged in this count an actionable representation. It characterizes Cardin's written statement of

---

[1]We perceive no statute of limitation problems with respect to either count. The alleged misrepresentation was made on September 5, 1972. Plaintiff, however, allegedly discovered the three conflicts of interest on February 12, 1975. The instant action was commenced on January 30, 1976. (See Code Civ. Proc., §§ 337, subd. 1, 338, subd. 4, 339, subd. 1.)

September 5, 1972, to plaintiff to the effect that there was no apparent conflict of interest between defendant's two insureds in the Burke case as merely a layman's opinion on a point of law.

We disagree. ■ There is an implied covenant of good faith and fair dealing in every insurance policy that neither party to it will do anything to injure the right of the other to receive the benefits of the policy. (*Johansen* v. *California State Auto Assn. Inter-Ins. Bureau* (1975) 15 Cal.3d 9, 14 [123 Cal.Rptr. 288, 538 P.2d 744]; *Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658 [328 P.2d 198, 68 A.L.R.2d 883].) ■ Normally one of the principal benefits to an insured, as here, is the provision of a proper defense by the insurer to an action brought against the insured that is within the coverage of the policy.[2] Cardin's statement was clearly a representation by defendant to plaintiff that a joint defense of its two insureds in the Burke case by the same law firm would be proper due to the absence of any apparent conflict of interest between them in the matter.

An insurer has a special relationship with its insureds and, among other things, owes to its insureds the implied-in-law duty just mentioned. (See *Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 403, 401 [89 Cal.Rptr. 78, 47 A.L.R.3d 286].) ■ This duty is fiduciary in nature (see *Gruenberg* v. *Aetna Ins. Co., supra,* 9 Cal.3d at p. 582 (dis. opn. of Roth, J.)), and any breach of it to the advantage of the person in fault that misleads another to its prejudice amounts to constructive fraud. (See Civ. Code, § 1573.) A form of such fraud is the nondisclosure by the fiduciary of relevant matters arising from the relationship. (See 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 580, p. 2219.) ■ Consequently if defendant knew at the time of Cardin's statement to plaintiff any facts indicating an actual conflict of interest in the defense of the Burke case between its two insureds, Cardin's statement to plaintiff would be actionable since in reliance on that representation plaintiff continued thereafter to acquiesce in his being represented in the Burke case by the same law firm which represented his codefendant, Dr. McReynolds.

[2]We reject the view of *Oda* v. *Highway Insurance Company* (1963) 44 Ill.App.2d 235 [194 N.E.2d 489, 494-496], that a public liability insurer has no duty of "general counselorship" to its jointly represented insureds with respect to the conduct of their defense. We believe that such a duty may exist if performance of it is necessary to assure the provision to them of a proper defense by the insurer.

We recognize, however, that according to *Merritt* v. *Reserve Ins. Co.* (1973) 34 Cal.App.3d 858, 880-881 [110 Cal.Rptr. 511], an insurer is not vicariously liable to its insured for negligent conduct of the insured's defense by independent counsel chosen by the insurer since such counsel acts with respect to the conduct of the defense as an independent contractor rather than as an agent of the insurer.

Plaintiff, however, has not alleged an actionable misrepresentation in his fraud count. This is because he has not shown that Cardin's representation of a lack of apparent conflict of interest between plaintiff and Dr. McReynolds in the matter of their common defense was false. As we will demonstrate almost immediately, none of the three conflicts in interest alleged constitute an *actual* conflict of interest between the two codefendants and without such actual conflict between jointly represented persons, there is no actionable impropriety in their joint representation. (See *Burum* v. *State Compensation Ins. Fund* (1947) 30 Cal.2d 575, 583-584 [184 P.2d 505]; *Klemm* v. *Superior Court* (1977) 75 Cal.App.3d 893, 899 [142 Cal.Rptr. 509].)

What plaintiff has done is to confuse divergence in interest with conflict in interest.[3]  ▮  Divergence in interest requires counsel to disclose to each of his jointly represented clients whatever is necessary to enable each of them to make intelligent, informed decisions regarding the subject matter of their joint representation. (See *Lysick* v. *Walcom* (1968) 258 Cal.App.2d 136, 147 [65 Cal.Rptr. 406, 28 A.L.R.3d 368]; *American Mut. Liab. Ins. Co.* v. *Superior Court* (1974) 38 Cal.App.3d 579, 590 [113 Cal.Rptr. 561].)

▮ Conflict of interest between jointly represented clients occurs whenever their common lawyer's representation of the one is rendered less effective by reason of his representation of the other.  ▮  Nothing like this is alleged in the fraud count. The difference in the personal exposure of the two insureds resulting from the difference in their maximum coverage, by itself and without more, creates no actual conflict of interest between them in the matter of their joint representation. The same may be said of the difference in their reinsurance situations since reinsurance is a matter ordinarily of concern only to the insurer.[4] Similarly the difference in the potential for liability of the two insureds,

---

[3]We note in this connection, though, that some 10 years ago the American Bar Association National Conference of Lawyers and Liability Insurers included among the guiding principles of the conference the suggestion that in a lawsuit involving more than one insured of the same company, the company should employ separate attorneys not associated with one another to defend each insured where their interests either diverged or conflicted. (See (Summer 1970) 20 Federation Ins. Counsel Q. 93, 99.)

[4]Actually under the reinsurance defendant had made of its respective potential liabilities to the two insureds, it was to defendant's interest, once it had settled Mrs. Burke's claim against Dr. McReynolds for $300,000, to settle her claim against plaintiff under the same policy because then defendant would not have had to pay the $25,000 it did from its own pocket.

standing alone, does not necessarily result in an actual conflict of interest between them so far as their joint defense is concerned.[5]

For the foregoing reasons we hold that plaintiff failed to state a cause of action in his fraud count.

C. *The Bad Faith Count*

■ As previously noted, plaintiff incorporated his fraud count into his bad faith count. In addition, he alleged that defendant breached its contractual obligation to him to act in good faith toward him and to deal fairly with him in (1) failing to advise him of the alleged conflicts of interest already discussed; (2) not providing him with separate counsel in the Burke case; (3) controlling joint defense counsel in that case; and (4) refusing to settle the liabilities of both codefendants in that case for the sum of $350,000 from the McReynolds' policy alone.

Plaintiff has not stated a cause of action for bad faith in any of these alleged breaches. We have already dealt with the absence of any actual conflicts of interest between the two doctors affecting the effectiveness of their joint representation in the Burke case. It is a well known fact that under insurance policies generally the insurer controls the defense it provides its insured. We see nothing improper in this customary practice. It is true that the trial memoranda between Kirtland & Packard and defendant, which plaintiff incorporated in this count, show that Dr. McReynolds had a much greater potential for liability than plaintiff, but plaintiff has not alleged how this disparity in potential liability affected in any way the joint defense defendant provided him. Defendant's refusal to settle the entire Burke case against both doctors for $350,000 from Dr. McReynolds' policy alone does not show any bad faith toward plaintiff. Without Dr. McReynolds' consent defendant could not lawfully use Dr. McReynolds' policy to settle Mrs. Burke's claims against plaintiff. Dr. McReynolds insured himself with defendant against only his own professional liability; he did not so insure plaintiff. Furthermore, the previously mentioned trial memoranda from Kirtland & Packard to defendant revealed that at the time of the McReynolds' settlement for

---

[5]Plaintiff answered an interrogatory in his legal malpractice suit against Kirtland & Packard that Dr. McReynolds, to plaintiff's then knowledge, said nothing in his testimony at the Burke trial that weakened or disparaged plaintiff's position as a codefendant therein. After appropriate notice, we have taken judicial notice of this interrogatory and the answer thereto at the request of defendant pursuant to Evidence Code, section 459.

$300,000, and generally prior thereto, plaintiff would not consent to any settlement whatsoever from his own policy.

These differing attitudes of the two insureds toward settlement of the Burke case are readily explainable. Dr. McReynolds had greater exposure to liability both generally and personally and therefore he instructed defendant to settle Mrs. Burke's claims against him within the limits of his policy. Plaintiff, on the other hand, had much greater insurance protection and a much lesser potential for liability. He therefore decided to withhold his consent to defendant's settling Mrs. Burke's claims against him. He gambled on a defense verdict and lost, but this loss was in nowise attributable to the fact that defendant used the same law firm for his defense as it used for his codefendant's defense.

## DISPOSITION

The judgment of dismissal under appeal is affirmed.

Allport, J., and Potter, J., concurred.

A petition for a rehearing was denied February 23, 1979, and appellant's petition for a hearing by the Supreme Court was denied March 22, 1979. Mosk, J., did not participate therein.