Filed 7/13/23  Gomez v. Reliant General Claims Services CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARIA GOMEZ et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>RELIANT GENERAL CLAIMS SERVICES, INC. et al.,<br><br>Defendants and Respondents. | B314207<br><br>(Los Angeles County<br>Super. Ct. No. 19STCV32537) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephen I. Goorvitch, Judge.  Affirmed in part, reversed in part, and remanded.

Mardirossian Akaragian, Garo Mardirossian, Armen Akaragian, Adam Feit; The Ehrlich Law Firm and Jeffrey I. Ehrlich for Plaintiffs and Appellants.

Hinshaw & Culbertson, Ray Tamaddon and Edward F. Donohue for Defendant and Respondent Transguard Insurance Company of America, Inc.

Wesierski & Zurek, Christopher P. Wesierski and Abe G. Salen for Defendant and Respondent Reliant General Claims Services.

———————————————

Plaintiffs and Appellants Maria and Trinidad Gomez Sr. (the Gomezes), parents of Trinidad Gomez (Gomez Jr.), appeal from an order granting summary judgment in their insurance bad faith and breach of contract action against Reliant General Claims Services Inc. and Transguard Insurance Company of America, Inc. (Respondents).  In 2015, Sergio Morales was driving the car of his mother, Leticia Carrillo, when he hit and killed Gomez Jr.  Carrillo was insured by Transguard.  The Gomezes obtained a $3 million judgment in a wrongful death action against Carrillo and Morales.  Carrillo and Morales assigned their rights against Respondents to the Gomezes, who then filed the present action against Respondents.  They allege Respondents acted in bad faith by failing to settle the wrongful death claims against Carrillo and Morales, and that they breached their contractual duties to defend and to pay post-judgment interest.

The trial court granted Respondents' motion for summary judgment, or alternatively, summary adjudication, as to each of the Gomezes' claims.  We conclude Respondents did not establish their entitlement to summary judgment; however, we affirm the trial court's summary adjudication of the breach of the covenant

of good faith and fair dealing claim. We reverse the trial court order granting summary adjudication of the breach of contract claims.

## FACTUAL AND PROCEDURAL BACKGROUND

### *The Accident, Underlying Lawsuit, and Settlement Discussions*

In August 2015, Morales was driving his mother's car when he hit Gomez Jr., who was walking in a crosswalk. Gomez Jr. was pronounced dead at the scene. The Gomezes filed suit against the City of South Gate, where the accident occurred, and later amended the suit to include claims against Carrillo and Morales. The Gomezes asserted claims against Carrillo on a permissive use theory and for negligent entrustment of her car to Morales. They sued Morales for negligent operation of the vehicle.

At the time of the accident, Carrillo held an automobile insurance policy issued by Transguard. The policy provided a bodily injury limit of $15,000 per person and $30,000 per accident. Transguard, through Reliant, its claims administrator, defended Carrillo and Morales against the Gomezes' lawsuit and appointed defense counsel. The same law firm represented both Carrillo and Morales.

On July 27, 2016, the Gomezes' counsel sent a letter to Respondents offering to "settle [the Gomezes'] wrongful death claims against your insureds' policy limits on the following terms and conditions provided that your insureds' policy limits does not exceed $600,000." The terms and conditions included that the offer had to be accepted in writing by August 27, 2016; that Transguard provide a copy of the insurance policy face page showing the policy limit; and that the insureds provide a

declaration attesting that they were "not in the scope of their employment or agency" at the time of the accident, they were not engaged in a joint venture with any other person at that time, and that they had no other applicable insurance policy. The letter also listed several factors on which the Respondents could condition acceptance, including an executed "Release of all Bodily Injury Claims against your insureds and their heirs only, which Release is not inconsistent with the terms and conditions of this offer."

On August 25, 2016, Respondents replied in writing: "Pursuant to condition (1) of your correspondence, we hereby accept your offer to settle your clients' claim for the insured's Bodily Injury policy limit of $15,000." Transguard enclosed with the letter the requested insurance policy page showing the bodily injury policy limit and the declaration signed by Carrillo and Morales.

Respondents also requested information from the Gomezes, and stated their acceptance of the offer required a "signed Release of All Claims form signed by the legal heirs of [Gomez Jr.]." Attached to the letter was a document titled "Settlement Agreement and General Release." In relevant part, the document read:

"3. RELEASORS desire to resolve all claims and disputes associated with the SUIT, including the Survivor's Claim and the Wrongful Death claim arising out of the Accident.

[¶]. . .

"5. Upon execution of this AGREEMENT, the RELEASORS hereby generally and specifically release and discharge RELEASEES, their agents, employees, attorneys, representatives, predecessors, successors, and insurance carriers,

4

and all those legally responsible for RELEASORS damages, and each of them, from any and all claims . . . arising out of the facts and circumstances of the automobile accident. . . ."

On August 31, 2016, counsel for the Gomezes replied: "Your Release adds new and unacceptable terms to the settlement, and is thus a counteroffer, which our clients hereby reject. Our Offer was limited to my clients' wrongful death claims, but the Release expressly releases both wrongful death *and* survivor actions (which we never offered to settle). The Release also requires my clients to waive the right to pursue claims against all others who are legally responsible for their damages, and is not properly limited in scope to release your insureds and their heirs only. . . ." The Gomezes also objected to other terms in the proposed release, such as an attorneys' fees clause.

The letter concluded, "Our Offer to resolve our clients' wrongful death claims within policy limits will never again be reinstated. You have failed to protect your insured and have breached the covenant [of] good faith and fair dealing . . . by making this counteroffer which is unreasonably inconsistent with the terms and conditions of our reasonable offer. [¶] We submit you have opened the policy, and we intend to obtain full fair and adequate compensation . . . without regard to the limits of your policy. We suggest you advise your insureds to retain independent and experienced counsel, because there now exists a conflict of interest between Reliant General and your insureds."

Consistent with the letter's assertion that the settlement offer would "never again be reinstated," the Gomezes did not request modifications to Respondents' proposed release or suggest settlement was possible on other terms. The parties

5

dispute whether Respondents made any further settlement overtures. The only undisputed evidence of subsequent conversations is from the Declaration of Adam Feit, counsel for the Gomezes, declaring he received a letter from Respondents on December 18, 2017, "which ambiguously stated that the policy limits were 'on the table.'"

In November 2018, the trial court in the underlying action granted summary judgment in favor of the City of South Gate. In April 2019, the Gomezes' action against Carrillo and Morales proceeded to a jury trial. The jury rendered a verdict of $3 million against Carrillo and Morales, finding them 30 percent and 70 percent at fault, respectively. Judgment was entered on April 19, 2019. On May 17, 2019, the Gomezes received a check for $15,000 from Transguard. In June 2019, Carrillo and Morales assigned their rights under the Transguard insurance policy to the Gomezes in exchange for a stay of enforcement of the judgment.

### The Bad Faith and Breach of Contract Action

In September 2019, based on the assignment of rights, the Gomezes filed suit against Respondents for breach of the covenant of good faith and fair dealing and breach of contract. The complaint alleged that Respondents unreasonably failed to settle the Gomezes' claims against Carrillo and Morales, failed to adequately defend Carrillo and Morales, and failed to pay post-judgment interest on the judgment. In December 2020, Carrillo filed a complaint-in-intervention asserting her own claims against Respondents.

In October 2020, Respondents filed a motion for summary judgment, or, alternatively, summary adjudication. Respondents argued the Gomezes' first cause of action for breach of the

6

covenant of good faith and fair dealing failed as a matter of law because the settlement demand was unreasonable as it did not offer the insureds a complete release of all claims. Respondents asserted their acceptance of the settlement for the full policy limit, with a request for release of all claims against the insureds, was a reasonable response. Respondents also argued that the Gomezes could not prevail as a matter of law on their second cause of action for breach of contract. Respondents contended there was no evidence of any conflict that required Carrillo and Morales to have separate counsel. Respondents further argued the terms of the policy did not require them to pay the entire amount of the underlying judgment, or interest on the judgment, since they made an early policy limits settlement offer. Finally, Respondents claimed that the Gomezes' action was barred by the doctrine of unclean hands. The Gomezes countered that there were triable issues of material fact as to each of these claims.

The trial court granted summary judgment in May 2021. It found the Gomezes' settlement offer was not reasonable as a matter of law because it did not resolve all claims against the insureds, and Respondents did not act unreasonably or in bad faith as to settlement. The trial court ruled the Gomezes' breach of the duty to defend claim failed because there was no evidence of an actual conflict between Carrillo and Morales that would have required the appointment of separate counsel. The court further concluded Respondents were not contractually required to pay interest on the judgment because they had offered to settle the case for the full policy limit before judgment was entered.

The Gomezes' appeal timely followed.

**DISCUSSION**

The Gomezes argue the trial court erred in granting summary judgment because Respondents failed to establish there were no triable issues of material fact, or that their claims failed as a matter of law. We agree summary judgment was not warranted as there were triable issues of material fact as to some of the Gomezes' claims. However, we affirm the trial court's order granting summary adjudication of the claim that Respondents acted in bad faith in failing to settle.

## I.    Standard of Review

Summary judgment is appropriate if there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.) A defendant moving for summary judgment has the initial burden of showing that a cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or there is a complete defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853.) If the defendant satisfies this initial burden, the burden shifts to the plaintiff to present evidence demonstrating there is a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850.)

" ' " ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." ' [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." ' [Citation.]" (*Hampton v. County of San Diego* (2015) 62 Cal.4th

8

340, 347.) We apply the same standard in reviewing an order granting summary adjudication. (*Mireskandari v. Edwards Wildman Palmer LLP* (2022) 77 Cal.App.5th 247, 256–257.)

## II. The Trial Court Properly Granted Summary Adjudication of the Gomezes' Bad Faith Claim

### A. Bad faith and the duty to settle: Applicable legal principles

"From the covenant of good faith and fair dealing implied by law in all contracts, and from the liability insurer's duty to defend and indemnify covered claims, California courts have derived an implied duty on the part of the insurer to accept reasonable settlement demands on such claims within the policy limits. [Citation.] '[A]n insurer is required to act in good faith in dealing with its insured. Thus, in deciding whether or not to settle a claim, the insurer must take into account the interests of the insured, and when there is a great risk of recovery beyond the policy limits, a good faith consideration of the insured's interests may require the insurer to settle the claim within the policy limits. An unreasonable refusal to settle may subject the insurer to liability for the entire amount of the judgment rendered against the insured, including any portion in excess of the policy limits. [Citation.]' [Citation.]" (*Hamilton v. Maryland Casualty Co.* (2002) 27 Cal.4th 718, 724–725.)

"An insured's claim for bad faith based on an alleged wrongful refusal to settle first requires proof the third party made a reasonable offer to settle the claims against the insured for an amount within the policy limits." (*Graciano v. Mercury General Corp.* (2014) 231 Cal.App.4th 414, 425 (*Graciano*).) However, even when presented with a reasonable settlement offer, "[a]n insurer's duty to accept . . . is not absolute," and

9

"failing to accept a reasonable settlement offer does not necessarily constitute bad faith." (*Pinto v. Farmers Ins. Exchange* (2021) 61 Cal.App.5th 676, 688 (*Pinto*).) " '[T]he crucial issue is . . . the basis for the insurer's decision to reject an offer of settlement.' [Citation.]" (*Ibid.*, citing *Walbrook Ins. Co. v. Liberty Mutual Ins. Co.* (1992) 5 Cal.App.4th 1445, 1460.)

Specifically, "[i]n evaluating whether an insurer acted in bad faith, 'the critical issue [is] the reasonableness of the insurer's conduct under the facts of the particular case.' [Citation.] To hold an insurer liable for bad faith in failing to settle a third party claim, the evidence must establish that the failure to settle was unreasonable." (*Pinto*, *supra*, 61 Cal.App.5th at p. 687.) The determination of an insurer's good or bad faith as to settlement must be evaluated in " 'light of the totality of the circumstances. . . .' [Citation.]" (*Hedayati v. Interinsurance Exchange of the Automobile Club* (2021) 67 Cal.App.5th 833, 843 (*Hedayati*); accord *Barickman v. Mercury Casualty Co.* (2016) 2 Cal.App.5th 508, 520 (*Barickman*) [" 'the ultimate test is whether the insurer's conduct was unreasonable under all of the circumstances' "].)

While the reasonableness of an insurer's conduct is "ordinarily a question of fact, it becomes a question of law where the evidence is undisputed and only one reasonable inference can be drawn from the evidence." (*Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.* (2001) 90 Cal.App.4th 335, 346; accord *Hedayati*, *supra*, 67 Cal.App.5th at p. 843; *Reid v. Mercury Ins. Co.* (2013) 220 Cal.App.4th 262, 278 (*Reid*) [court affirmed summary judgment on bad faith claim based on a failure to settle after reviewing letters between insurance company and claimant].)

10

**B. Discussion**

We find no error in the trial court's grant of summary adjudication. The only reasonable inference that can be drawn from the undisputed evidence is that Respondents did not act unreasonably in failing to settle the Gomezes' claims.

The parties' settlement discussions were set forth in the letters between the Gomezes and Respondents. The Gomezes' first letter offered to settle the wrongful death claims for the policy limit and stated that the offer must be accepted in writing by August 27, 2016. Respondents replied in writing before the deadline, explicitly accepting the offer to settle for the policy limit. They also provided materials the Gomezes requested in their letter. The Respondents stated that their acceptance required a "Release of All Claims form" signed by the legal heirs of Gomez Jr. and a notarized "Affidavit of Heirs."

Days later, the Gomezes responded by stating that the Respondents' letter was a "counteroffer" that the Gomezes "reject[ed]." The Gomezes explained that they had offered to settle only the wrongful death claims and not any other claims. They did not propose a revised release of claims or another way to reach a settlement. Instead, the Gomezes rescinded their settlement offer, stating: "Our [o]ffer to resolve our clients' wrongful death claims within policy limits will never again be reinstated." The letter then advised Respondents to inform their insured to retain counsel, implying the Gomezes would file a bad faith lawsuit.

Thus, Respondents accepted the settlement demand for the full policy limits, in writing, by the deadline, with a proposed release. (*Graciano, supra,* 231 Cal.App.4th at p. 434 [insurer acts in good faith as a matter of law when it timely tenders full policy

11

limits in exchange for release to effectuate settlement].)  In response, the Gomezes permanently rescinded their settlement offer and threatened a lawsuit.  The Gomezes argue there are triable issues as to whether Respondents acted unreasonably by conditioning their acceptance of the offer on a release that would have dismissed their pending claims against the City of South Gate.  We disagree.

*Barickman, supra*, 2 Cal.App.5th 508, a case on which the Gomezes rely, provides a helpful contrast.  In *Barickman*, an insured driver hit two individuals walking in a crosswalk.  The driver was sentenced to prison and ordered to pay victim restitution.  When the driver informed her insurer that she was in a car accident, the insurer offered to pay her policy limit to the victims.  But when the victims sought to modify the insurer's form release to exclude the court-ordered restitution, the insurer refused.  (*Id.* at pp. 512–514.)  Under California law, the settlement of a civil action does not relieve a defendant of the legal obligation to pay court-ordered restitution.  (*Id.* at pp. 517–518.)  Thus, the insurer's refusal to modify the release as requested, or to propose other revisions, was sufficient for the trier of fact to conclude the insurer acted unreasonably.  (*Id.* at pp. 521–522.)

Here, there is no evidence that Respondents' proposed release would have required the Gomezes to relinquish a legal right such as victim restitution in a criminal matter.  Moreover, an insurer may be required to reject an offer to settle that does not adequately protect an insured from future liability, to avoid acting in bad faith.  This is because an insurer must protect its insured from liability after settlement.  (*Coe v. State Farm Mut. Auto. Ins. Co.* (1977) 66 Cal.App.3d 981, 994 [bad faith for an

12

insurer to accept an offer of settlement that would have left its insured exposed to a recoupment action by a state workers' compensation fund]; *Strauss v. Farmers Ins. Exchange* (1994) 26 Cal.App.4th 1017, 1021 ["an insurer may, within the boundaries of good faith, reject a settlement offer that does not include a complete release of all of its insureds" where acceptance would have exhausted the policy].) No reasonable trier of fact could conclude Respondents' initial response to the Gomezes' settlement offer was unreasonable or constituted bad faith.

An insurer may act in bad faith if it rejects a reasonable modification to a settlement release, even when, as here, it agrees to the requested monetary settlement amount. (*Barickman, supra,* 2 Cal.App.5th at p. 522.) However, in this case the Gomezes did not ask Respondents to modify the proposed release, and there was thus no refusal to do so by Respondents. Instead, the Gomezes rejected Respondents' initial proposed release and immediately terminated settlement discussions. The Gomezes contend their expert's opinion that Respondents should have sought further negotiations, or, of their own accord, "revised the Release so as to effectuate settlement," created a triable issue as to the reasonableness of Respondents' conduct. But the undisputed facts establish that the Gomezes did not communicate any willingness to entertain further settlement negotiations. Their response to Respondents' acceptance of a policy limits settlement was to unequivocally state that their offer to settle was permanently rescinded. Indeed, in his deposition, Reliant Claims Director David Purcell testified that, when requested, Reliant would modify the release to effectuate settlement. It is undisputed that the Gomezes made no such request.

13

To find the insurer acted in bad faith in not settling, "there must be, at a minimum, some evidence either that the injured party has communicated to the insurer an interest in settlement, or some other circumstance demonstrating the insurer knew that settlement within policy limits could feasibly be negotiated." (*Reid*, *supra*, 220 Cal.App.4th at p. 272.) "In the absence of a settlement demand or any other manifestation the injured party is interested in settlement, when the insurer has done nothing to foreclose the possibility of settlement . . . there is no liability for bad faith failure to settle." (*Id.* at p. 266.) While here there was a settlement offer, it was formally rescinded, along with the statement that it would never again be reinstated.

The Gomezes' bad faith claim for failure to settle rests solely on Respondents' proposal of a release of all claims and an alleged failure to attempt further negotiations after the Gomezes unequivocally terminated settlement discussions. The Gomezes neither argued, nor offered evidence to support, that Respondents engaged in other conduct that defeated or impaired the possibility of settlement. (Cf. *Hedayati*, *supra*, 67 Cal.App.5th at pp. 836, 850–852 [triable issue of fact where insurer failed to provide information necessary for settlement, untimely responded to settlement offer, and reasonable trier of fact could find insurer's counteroffer was "not reasonably calculated to obtain [victim offeror's] assent"].) The Gomezes did not show there were triable issues of material fact as to the Respondents' reasonableness in failing to settle the case.[1]

---

[1] The Gomezes assert various evidentiary arguments regarding correspondence Respondents offered as support for their summary judgment motion. Because we reach our

14

The critical question in determining whether Respondents acted in bad faith is why they rejected the settlement offer, based on the factual circumstances of this case. (*Pinto, supra,* 61 Cal.App.5th at pp. 687–688.) Here, the Respondents accepted the settlement offer amount and timely tendered the policy limits, with a release. The Gomezes objected to the release but did not request modifications. Instead, they rescinded their offer, wrote that it would never again be reinstated, and warned that bad faith litigation would ensue. The undisputed evidence establishes that the Gomezes explicitly communicated that there was no longer any interest in settlement or further negotiations. There was no evidence of a bad faith failure to settle in this case, and no foundation for a claim of breach of the covenant of good faith and fair dealing. (*Reid, supra,* 220 Cal.App.4th at p. 279.)

## III. There is a Triable Issue as to Breach of the Duty to Defend

In their complaint, the Gomezes alleged a conflict of interest between Carrillo and Morales required Respondents to appoint separate counsel. The trial court granted summary adjudication of the claim, ruling that the failure to retain separate counsel for Carrillo and Morales was unnecessary because there was insufficient evidence of an actual conflict between them. We conclude there were triable issues of material fact sufficient to overcome summary adjudication on this claim.

An insurer's "duty to defend is contractual." (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 47 (*Buss*).) Liability

---

conclusion above without relying on any record references to contested evidence of Respondents' subsequent settlement offers, we need not consider the Gomezes' arguments on appeal challenging the trial court's evidentiary rulings.

15

insurance usually imposes two separate obligations on an insurer: (1) to indemnify its insured against third party claims covered by the policy; and (2) to defend such claims against its insured by furnishing competent counsel and paying attorney fees and costs. (*Howard v. American National Fire Ins. Co.* (2010) 187 Cal.App.4th 498, 519; see also *J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.* (1997) 59 Cal.App.4th 6, 14, citing *Merritt v. Reserve Ins. Co.* (1973) 34 Cal.App.3d 858, 882 (*Merritt*) ["The duty to defend includes hiring competent counsel, and 'keep[ing] abreast of the progress and status of the litigation in order that it may act intelligently and in good faith on settlement offers' "].) "Normally one of the principal benefits to an insured . . . is the provision of a proper defense by the insurer to an action brought against the insured that is within the coverage of the policy." (*Spindle v. Chubb/Pacific Indemnity Group* (1979) 89 Cal.App.3d 706, 712 (*Spindle*).)

As explained in the context of conflicts between an insured and the insurer, when a conflict necessitates the insured being represented by independent counsel, the insurer's duty to defend includes paying for that independent counsel. (*San Diego Navy Federal Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358, 369, 375, superseded by Civil Code section 2860.) However, not every conflict triggers this obligation. "For independent counsel to be required, the conflict of interest must be 'significant, not merely theoretical, actual, not merely potential.' [Citation.]" (*James 3 Corp. v. Truck Ins. Exchange* (2001) 91 Cal.App.4th 1093, 1101; *Lehto v. Allstate Ins. Co.* (1994) 31 Cal.App.4th 60, 71 (*Lehto*); *Spindle*, *supra*, 89 Cal.App.3d at p. 713 [in context of a common defense of insureds in an insurance action, "without . . . actual conflict between

16

jointly represented persons, there is no actionable impropriety in their joint representation"].) A conflict requiring independent counsel for jointly represented parties occurs "whenever their common lawyer's representation of the one is rendered less effective by reason of his representation of the other." (*Spindle*, at p. 713; *James 3 Corp.,* at p. 1101, italics omitted.)[2]

Drawing all inferences in favor of the Gomezes as the nonmoving party (*Aguilar*, *supra*, 25 Cal.4th at pp. 844–845), we conclude there is evidence creating a triable question of fact as to whether there was an actual conflict such that Carrillo and Morales were entitled to have Respondents provide them with separate, independent counsel. During her deposition, Carrillo testified that Morales did not have her permission to use her car at the time of the incident. Then, after her counsel interjected and conferred with her, over the objection of opposing counsel, Carrillo changed her response to indicate that Morales did have her permission.[3] The Gomezes' theories of liability as to Carrillo

---

[2] Counsel may represent two insureds, even if they have conflicting interests, if defense counsel discloses the potential conflict and obtains written consent from each of them. (Rules Prof. Conduct, rule 1.7.) There is no evidence in the record of a disclosure of a potential conflict and written waiver.

[3] The following colloquy occurred during Carrillo's deposition:
"Q: You allowed Mr. Morales to use your car in August 2015; is that correct?
"A: No.
"Q: You never let him use your car in August of 2015?
"A: No.
"Q: So when Mr. Morales used your car in 2015, it was

required the jury to find that she gave Morales permission to use her car, and that she knew, or should have known, that he was unfit to drive. The jury also had to apportion liability between Carrillo and Morales. Pursuit of a defense on behalf of Carrillo that Morales used her car without her permission would have provided Carrillo an avenue to potentially avoid all liability for the accident, leaving Morales solely responsible.

A divergence of interests alone would not be sufficient to establish Respondents were obligated to provide independent counsel. (*Spindle, supra,* 89 Cal.App.3d at p. 713; *Lehto, supra,* 31 Cal.App.4th at p. 71 [permissive use case in which father and son were the insureds; only a potential conflict until settlement offer was made to one insured only]; see also *Progressive*

---

against your permission?

    [Objection by defense counsel]

    "Q: You can answer it.

    "A: Could you please repeat the question?

    "Q: Sure. So in August 2015 when Mr. Morales used your car, it was against your permission?

    "A: No.

    "Q: Did you give him permission in August of 2015 to use your car?

    "A: No.

    "Q: Was he allowed to use your car or not in August of 2015?

    "A: Yes.

    "Q: Which one?

    [¶]. . .

    "A: I didn't understand the question."

    At this point, Carrillo's counsel took a break, over the objection of the Gomezes' counsel. Following the break, Carrillo testified that she had authorized Morales to use her car in August 2015.

*Northwestern Ins. Co. v. Gant* (10th Cir. 2020) 957 F.3d 1144, 1153–1154 [no insurer liability for negligent hiring of counsel where insureds were family members and had no desire to blame one another, and instead advanced unified position that son was not at fault].)  But here, the Gomezes provided evidence from which a reasonable trier of fact could conclude that Carrillo was ready to testify that Morales did not have her permission to use the car, creating the basis for a defense her counsel could not pursue without harming Morales's interests.  (*Industrial Indemnity Co. v. Great American Ins. Co.* (1977) 73 Cal.App.3d 529, 536–537 [counsel retained by insurer to defend multiple insureds improperly continued the representation even after conflicts between insureds became apparent]; *Hammett v. McIntyre* (1952) 114 Cal.App.2d 148, 157–158 [driver denied fair trial where insurer provided single counsel for driver and owner of car, permissive use alleged, and owner claimed he had not given permission].)

Respondents argue that even if there was a conflict between Carrillo and Morales, an insurer cannot be held responsible for the actions of retained defense counsel as a matter of law, relying on *Merritt*, *supra*, 34 Cal.App.3d 858.  We disagree that *Merritt* can be read so broadly.  In *Merritt*, the insured attempted to hold the insurance company liable under a theory of vicarious liability for its retained defense counsel's negligence in conducting the litigation.  (*Id.* at pp. 879–882.)  The *Merritt* court rejected the claim, explaining that "[h]aving chosen competent independent counsel to represent the insured in litigation, the carrier may rely upon trial counsel to conduct the litigation, and the carrier does not become liable for trial counsel's legal malpractice.  If trial counsel negligently conducts

19

the litigation, the remedy for this negligence is found in an action against counsel for malpractice and not in a suit against counsel's employer to impose vicarious liability." (*Id.* at pp. 881–882.)

The claim here is for breach of the insurer's own duty to defend by failing to provide counsel who could deliver effective representation to both insureds. An insurer can be held liable for damages caused by its failure to provide an adequate defense. (See *Travelers Ins. Co. v. Lesher* (1986) 187 Cal.App.3d 169, 191, 194–199, disapproved of on other grounds by *Buss*, *supra*, 16 Cal.4th at p. 50.) Even if counsel acts negligently, an insurer still "remains liable for the negligent performance of its own duties." (*Merritt*, *supra*, 34 Cal.App.3d at p. 882.) The *Merritt* court had no occasion to consider whether the failure to appoint independent counsel may breach the insurer's duty to defend when there are multiple insureds whose interests are in actual conflict. (*Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 348 ["A decision, of course, is not authority for what it does not consider"].) Respondents have not established they are entitled to summary adjudication on the breach of contract claim based on the duty to defend.

## IV. Respondents Are Not Entitled to Summary Adjudication of the Breach of Contract Claim Based on the Failure to Pay Post-Judgment Interest

The Gomezes' complaint asserted they are owed interest on the full amount of the judgment between April 19, 2019, when judgment was entered, and May 17, 2019, when they received a payment of $15,000 from Respondents. Respondents countered they had no obligation to pay interest because they offered to pay the policy limit. In the alternative, they argued that if any interest were owed, it is only on the $15,000 limit of liability.

The trial court determined the policy provision regarding post-judgment interest was "not triggered" because Respondents offered to settle for the policy limits before judgment was entered.

" 'Interpretation of an insurance policy is a question of law.' [Citation.]" (*Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115 (*Palmer*).) It "is solely a judicial function, unless the interpretation turns on the credibility of extrinsic evidence." (*State Farm General Ins. Co. v. Mintarsih* (2009) 175 Cal.App.4th 274, 283.) Interpretation of an insurance policy follows the general rules of contract interpretation. (*TRB Investments, Inc. v. Fireman's Fund Ins. Co.* (2006) 40 Cal.4th 19, 27.) Policy language that is clear and explicit governs. (Civ. Code, § 1638 ["The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity"]; *Foster-Gardner, Inc. v. National Union Fire Ins. Co.* (1998) 18 Cal.4th 857, 868.) " 'A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable.' [Citation.]" (*Foster-Gardner*, at p. 868.) When a contract's language is unambiguous, intent is determined solely by the language within the four corners of the contract. (*Brown v. Goldstein* (2019) 34 Cal.App.5th 418, 432.) "When interpreting a policy provision, we must give its terms their ' "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage." ' [Citation.]" (*Palmer*, at p. 1115.)

The credibility of extrinsic evidence is not at issue in this case. Accordingly, we begin by looking at the plain language of the contract. (See *Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1126–1128; *City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 395.)

The policy unambiguously caps post-judgment interest at "that portion of the judgment which is not more than our limit of liability," which in this case was $15,000. The trial court therefore properly rejected the Gomezes' argument that they were entitled to interest on the entire $3 million dollar judgment, as opposed to interest on the policy limit of $15,000.

However, we reject Respondents' argument that their pre-judgment settlement offer excused their obligation to pay interest on damages awarded at trial. Under the policy, Transguard agreed to pay: "in addition to our limit of liability: [¶] . . . [¶] (3) interest on *damages awarded in a suit* we defend accruing *after judgment is entered and before* we have paid, *offered to pay*, or deposited in court *that portion of the judgment* which is not more than our limit of liability." Thus, the payment offer contemplated relates to damages determined through litigation, concerns a time period "after judgment is entered," and must reflect a payment or offer to pay a "portion of the judgment." There is nothing in the ordinary meaning of this provision that suggests an offer to settle—even a conditional offer—made *before* judgment would absolve Respondents of their contractual commitment to their insureds to pay interest on "damages awarded in a suit."

Moreover, contract provisions must be interpreted in context, giving effect to every part of the policy with " 'each clause helping to interpret the other.' [Citation.]" (*Palmer*, *supra*, 21 Cal.4th at p. 1115.) The post-judgment interest provision is situated in a section of the policy titled "Part I – Liability" and then under a subsection titled "Additional Payments." In addition to the "interest on damages awarded in a suit we defend," the insurer is obligated to pay "all costs we incur in the

settlement of a claim or defense of a suit," "all costs assessed against you in our defense of a suit," and "any other reasonable expenses incurred at our request." Thus, the "additional payments" provision encompasses payments associated with a "suit" the insurer defends. It is also broad, contemplating "any other reasonable expenses." Nothing in the provision renders the policy provision here amenable to the strained and narrow interpretation Respondents urge. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18–19 ["Courts will not strain to create an ambiguity where none exists"].)

Accordingly, we reverse the grant of summary adjudication on the Gomezes' breach of contract claim based on the failure to pay post-judgment interest.

## DISPOSITION

The judgment is reversed. The matter is remanded with directions that the trial court vacate its order granting Respondents' motion for summary judgment and enter a new order granting summary adjudication on the claim for breach of the duty of good faith and fair dealing for failure to settle and denying summary adjudication of the Gomezes' claims for breach of the duty to defend by failing to appoint separate counsel and breach of contract by failing to pay post-judgment interest. The parties shall bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

EGERTON, J.

24